Cuervo plan

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-20492 GLT |
| | ) | |
| JOSEPH CUERVO and MARY E. CUERVO, | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | |

## PLAN OF REORGANIZATION

(filed October 23, 2017)

TO ALL PARTIES IN INTEREST OF JOSEPH CUERVO and MARY E. CUERVO, DEBTORS HEREIN.

WHEREAS, this is a Plan of Reorganization which was filed by the Debtors, Joseph Cuervo and Mary E. Cuervo ("Debtors"), on October 23, 2017;

WHEREAS, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 9, 2017. The case was converted to chapter 11 on March 27, 2017;

WHEREAS, such reorganization under this Plan will tend to rehabilitate the financial status of the Debtors and will be in the best interest of their creditors.

NOW THEREFORE, Debtors propose in compliance with 11 U.S.C. §1121, et a seq. the following Plan of Reorganization which comprises the following articles:

Section    I    -    Definitions

Section    II    -    Summary of Classification of Claims and Interests

Section    III    -    Classification of Claims and Interests

Section    IV    -    Claims Which Are Not Classified Under the Plan

Section    V    -    Treatment of Unimpaired Claims and Interests

Section    VI    -    Treatment of Non-Classified Priority Tax Claims

Section    VII    -    Treatment of Impaired Claims

Section    VIII    -    Means for Implementation of the Plan

Section    IX    -    Sale of Residence

Section    X    -    Provisions for Claims and Equity Security Interests Generally

Section    XI    -    Discharge and Final Decree

Section    XII    -    Retention of Jurisdiction

Section    XIII    -    Miscellaneous Provisions

# I. Definitions

The following terms, when used in this Plan of Reorganization, will, unless the context otherwise indicates, have the following meanings, respectively:

1.01 **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 case allowed under Section 503(b) and 507(a)(1) of the Code.

1.02 **"Allowed Claim"** means a claim to the extent such claim is either (a) scheduled by the Debtor on its Schedules D, E, or F, not listed as contingent, unliquidated or disputed or (b) as otherwise been allowed by a final order or pursuant to the Plan.

1.03 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

1.04 **"Code"** means Title 11 of the United States Code, 11 U.S.C §101,et seq. as amended.

1.05 **"Claim"** has the meaning set forth in Section 101 of the Bankruptcy Code.

1.06 **"Class"** shall have the mean the category of holders of claims or equity interests in such category as provided by 11 U.S.C. Sec. 1122 of the Code, each such Class being more fully defined in Section III of the Plan.

1.07 **"Collateral"** means any property interest in the property of the Debtor's estate that is subject to a lien to secure the payment or performance of the claim which lien is not avoidable or otherwise invalid under the Code or state law.

1.08 **"Debtor" or "Debtors"** means JOSEPH CUERVO and MARY E. CUERVO.

1.09 **"Debtors' Assets" or "Debtors' Property"**: means all real and personal property of the Debtors.

1.10 **"Disclosure Statement"** means the Disclosure Statement related to the Plan and approved by the Court.

1.11 **"Disputed"** means that portion or all of a claim that is not an allowed claim.

1.12 **"Exempt Property"** shall mean the Debtors' Assets which have been exempted under 11 U.S.C. Sec. 522.

1.13 **"Final Court Approval"** means when all appeals relating to an Order entered by the Court are finally resolved.

1.14 **"General Unsecured Claim"** means a claim that it not an Administrative, Priority, or Secured Claim.

1.15 **"Lien"** has the meaning set forth in Section 101 of the Bankruptcy Code.

1.16 **"Medco"** shall mean Medco Commercial Management Group, Inc. which is 50% owed by Joseph Cuervo.

1.17 **"Personal Property"** shall mean all the Debtor's personal property listed on here Schedule B.

1.18 **"Plan"** means this Plan of Reorganization and any modifications and amendments.

1.19 **"Plan Confirmation Date"** means the date the order confirming the Plan becomes final and not subject to further appeal.

1.20 **"Plan Distribution Date" or "PDD"** shall mean the 90th after the Plan Confirmation Date.

1.21 **"Priority Claim"** means any claim that is entitled to priority in accordance with section 507(a) of the Bankruptcy Code, other than an administrative expense claim.

1.22 **"Secured Claim"** means any claim that is secured by a valid lien on the Debtors' property.

1.23 **"Residence"** means the Debtors' residence located at 8000 Sherwood Drive, Presto, PA 15142

## Section II. Summary of Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | Class 1 - JP Morgan Chase, N.A. mortgage claim. | [Not Impaired] |
| 2.02 | Class 2 - JP Morgan Chase, N.A. security interest. | [Impaired[ |
| 2.03 | Class 3 - Administrative claims. | [Not Impaired] |
| 2.04 | Class 4 - IRS non- priority tax claims. | [Impaired] |
| 2.05 | Class 5 - Non-priority unsecured claims. | [Impaired] |
| 2.06 | Class 6 - Equity security interests. | [Not Impaired] |

## Section III. Classification of Claims and Interests

3.01    **CLASS 1** - The secured claim of the **JP MORGAN CHASE BANK, N.A.** as set forth in proof of claim No. 3 which is secured by a first mortgage against the Residence to the extent that such claim is an allowed, non-voidable, and unavoidable secured claim under the Code.

3.02    **CLASS 2** - The secured claim of **JP MORGAN CHASE BANK, N.A.** which is secured by a security interest in the Debtors' 2014 Jeep Grand Cherokee to the extent that such claim is an allowed, non-voidable, and unavoidable secured claim under the Code.

3.03    **CLASS 3** - All claims for administrative expenses by Debtors' counsel, **Gary W. Short,** the **Office of the United States Trustee,** the **Clerk's Office of the Bankruptcy Court,** and all other administrative claimants, whose claims are entitled to priority under §507(a)(1) of the Code.

3.04    **CLASS 4** - The non-priority unsecured claims of the **Internal Revenue Service ("IRS")** claim which are allowed non-priority unsecured claims under the Code.

3.05    **CLASS 5** - All **non-priority unsecured claims** other than Class 4 claims unless the IRS elects to have its Class 4 claim treated as a Class 5 claim.

3.06    **CLASS 6** - All equity security interest of the Debtors.

## Section IV. Non-Classified Claims

3.07    **IRS** - The priority tax claims of the **IRS** to the extent such claim is an allowed priority claim under the Code.

3.08    **REVENUE** - The priority tax claims of the **Pennsylvania Department of Revenue ("Revenue")** to the extent such claim is an allowed priority claim under the Code.

## Section V. Treatment of Unimpaired Claims and Interests

5.01    All claims against or interests in the Debtors are impaired under the Plan with the

exception of the Classes 1, 3, and 6.

    5.02    **CLASS 1** - The Class 1 claimant, **JP MORGAN CHASE BANK, N.A.** shall retain the lien which secures such claim and be paid a 100% of such claim in accordance the terms of the contract upon which such claim based and applicable state law.

    5.03    **CLASS 3** - Class 3 administrative claims shall be paid upon Court approval.

    5.04    **CLASS 6** - Class 6 equity security interests which shall be retained by Debtors and are unaffected by the Plan.

## Section VI. Treatment of Non-Classified Tax Claims

    6.01    **Non-Classified Claims**: The allowed priority tax claims of the IRS and Revenue are not classified under the Plan. These claims will be paid in full in seventy two equal monthly payments with interest at four percent per annum with payments commencing thirty days after the Plan Confirmation Date. Debtors are entitled to make pre-payments on these claims. If a pre-payment is made, the future monthly payments shall be reduced proportionately.

## Section VII. Treatment of Impaired Claims

    7.01    **CLASS 2** - **JP MORGAN CHASE BANK, N.A.** shall retain the lien which secures its Class 2 claim and be paid the balance owed on the Class 2 claim as of the Plan Confirmation Date according to subparagraph "a" or subparagraph "b" below:

    a.    **Treatment A**: Claimant shall be paid 100% of such claim with interest at 3.0% per annum in 72 equal monthly payments commencing on thirty days after the Plan Confirmation Date; or

    b.    **Treatment B**: If such claimant so designates on a timely filed ballot to elect to be paid according to Treatment B, Claimant shall be paid 100% of such claim with interest at 4.0% per annum in 48 equal monthly payments commencing thirty days after the Plan Confirmation Date.

    7.03    **CLASS 4** - The allowed Class 4 claim of the **IRS** shall be paid in accordance with Treatment "A" or Treatment "B" as set forth below:

<u>Treatment A</u>:

(1) If the IRS timely agrees to Treatment A, the IRS shall be paid $150,000 on the Plan Distribution Date ("PDD") and $50,000 from the sale of the Residence within 240 days after the PDD. These payments shall be applied first to pay taxes for the

*oldest outstanding tax years related to such claim for which taxes are owed, then to the next oldest outstanding tax year and so on until all outstanding taxes are paid* . If any funds remain after payment of the taxes, the balance shall be applied to pay unpaid interest *in the same order of priority.*

(2) Thereafter the unpaid balance of the Class 4 claim, *excluding penalties ("Unpaid Balance")*, shall be paid in equal annual lump sum payments for the next ten years commencing one year after the PDD in an amount sufficient to pay the Unpaid Balance in full with interest at 4%. Any prepayments made on the Unpaid Balance shall reduce the amount due for the remaining annual payments proportionately.

(3) None of the payments shall be applied in payment of Class 4 penalty claims which shall be deem discharge when the Debtors are granted a discharge.

**Treatment B**:

If the IRS does not timely agree to be paid in accordance with Treatment A, its entire Class 4 claim shall be re-classified under the Plan as a Class 5 claim and be paid according to the treatment of Class 5 claims and the Class 4 claim classification under the Plan is void.

7.04    **CLASS 5** - The treatment of allowed **Class 5 Non-Priority Unsecured Claims, (which may or may not include the claim of the IRS which is listed as a Class 4 claim),** depends upon the total amount of allowed Class 5 claims:

### Class 5 Claims Total Less than $100,000

**A.**    *Less the $100,000*: If the total amount of allowed Class 5 claims *(which shall not include the Class 4 IRS claim if the IRS agrees to be paid its Class 4 claim according to the Class 4 treatment)* is less than $100,000, a Class 5 claim shall be paid in full satisfaction of its claim, either:

> A(1) **30% Lump Sum Payment:** Claimants shall be paid a 30% lump sum payment on the Plan Distribution Date; or
>
> A(2) **100% with Interest in Deferred Payments**: If such claimant so elects on a timely filed ballot, such claimant shall be paid 100% of such claim with interest at 3.0% in 40 equal quarterly payments commencing on the Plan Distribution Date.

### Class 5 Claims Total at Least $100,000

**B.** *30% in Deferred Payments*: If the total amount of allowed Class 5 claims total $100,000 or more *(which will be the case if the IRS chooses to have its Class 4 claim treated as a Class 5 claim)*, an allowed Class 5 claim shall be paid in full satisfaction of its claim, to the extent such claims are dischargeable, 30% of such claim without interest in 120 equal

5

monthly payments commencing thirty days after the PCD.

## Section VIII. Means for Implementation of the Plan

8.01 *Implementation*: The Plan is to be implemented by the reorganized Debtors through the Debtor's future earnings and the sale of their Residence.

8.02 *Litigation Necessary to Consummate Plan*: If the Debtors and the IRS cannot agree upon the IRS's allowed claims, the Debtors will file an objection to the IRS's claims.

## Section IX. Sale of Residence

9.01 *Sale of Residence*: The Debtors intend to sell the Residence and use the net proceeds from the sale to make a $50,000 lump sum payment to the IRS on its Class 4 claim and to build an smaller residence to lower their housing costs. Debtors are authorized to sell the Residence after the entry of a final decree by private sale without the necessity of any further Court authorization including authorization under 11 U.S.C. Sec. 363.

9.02 *Applicability of 11 U.S. Code § 1146*: The sale of the Residence is subject to Section 1146(a) of the Code provides:

> "(a) The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."

Accordingly the sale of the Residence and recording of the deed related thereto shall not be subject to real estate transfer taxes and neither the Debtors nor the buyers of the Residence shall be obligated to pay such tax.

## Section X.

## Provisions for Claims and Equity Security Interests Generally

10.01 *Contingent, Disputed, or Unliquidated Claims:* In the event that the claim of any creditor is contingent, unliquidated, or subject to a dispute on the Plan Confirmation Date, the Debtor and Creditor may, in their sole discretion, request the Court to estimate for the purpose of allowance under Section 502 of the Code, as soon as practicable after the Plan Confirmation Date, (a) any disputed, contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay administration of this Chapter 11 case, and (b) any right to payment arising from the right to an equitable remedy for breach of performance. Any holder of a disputed, unliquidated, or contingent claim, who has not sought the right to vote an estimated amount prior to the hearing on confirmation of the Plan shall not be entitled to vote on the Plan.

## Section XI. Discharge and Final Decree

11.01 *Discharge*: Upon completion of payments under the Plan to Class 2,3,4, and 5, the Debtors will file a motion for entry of discharge to obtain a discharge of all liabilities to be discharged pursuant to 11 U.S.C. §1141. Any dischargeable liabilities shall be discharged upon the entry of an order of discharge.

11.02. *Final Decree*: Promptly after the Plan Distribution Date, Debtors shall file a motion for entry of a final decree to close the Debtors' chapter 11 proceeding subject to the Court retaining jurisdiction as set forth in Section XI.

## Section XII. Retention of Jurisdiction

12.01 The Bankruptcy Court shall retain jurisdiction of this case after the PCD for the purposes set forth in 11 U.S.C.§§506, 524, 1127(b)(c)(d)(e), 1141, 1142, 1143, 1146, and this Section to (a) determine the allowability, avoidability, and voidability of any claim or interest that arose prior to the PCD, (b) fix allowance of compensation or other administrative expenses, whenever and however arising, (c) enforce the payment of all administrative expenses, (d) rule on any motion or complaint, whether filed prior or subsequent to the PCD, (e) enter a final decree, (f) enter a discharge order and (g) adjudicated any motion filed by the Debtors to re-open the case to enforce the terms of the Plan.

## Section XIII. Miscellaneous Provisions

13.01 *Plan Amendments* - The treatment of any claim or other Plan provision may be amended prior to the entry of a final decree provided such amendment is approved by the Court.

13.02 *Non-Impairment by Agreement*: Debtors and any claimant may enter into a stipulation to modify the contract upon which such claim is based to (a) remove all defaults which may exist under the contract as of confirmation of the Plan, (b) have the claim deemed current, and (c) pay the claim according to the modified contract and state law and not under the Plan.

13.03 *Present Value Determinations*: In the event the Court rules that any proposed interest rate under the Plan for any class does not satisfy the Code's requirements, then the applicable interest rate for such class shall be such rate which is approved by the Court.

13.04 *Executory Contracts and Unexpired Leases* - All pre-petition executory contracts and unexpired leases of the Debtors shall be deemed rejected as of the PCD unless an application to assume any such contract or lease is filed by the Debtors prior within thirty days after the PCD.

13.05 *Section 1129(a)(5) Disclosure* - The identity and affiliation of the only individual who is to serve, after confirmation of the Plan, as director, officer, or a voting trustee of the Debtor, and affiliates of the Debtor participating in the joint plan with the Debtor, or successor to the Debtor

under the Plan are Joseph Cuervo and Mary E. Cuervo who are also the only insiders who will be employed or retained by the reorganized Debtors. The projected income for 2018 for Joseph Cuervo is $300,000 and for Mary Cuervo is $77,565.
\

13.06 *Remedy for Defects, Omissions, and Conflicts in Plan* - Debtors may remedy any defect or omission, or reconcile any inconsistencies in the Plan ("Remedies"), with approval of the Court, and so long as it does not materially or adversely affect the interests of the creditors in such a manner and as may be necessary to carry out the purposes, intent, and effect of the Plan. Prior to the entry of a plan confirmation order Remedies may be set forth in the order confirming the Plan. After the entry of a confirmation order, Remedies shall become binding on the entry of an order approving the Remedies.

13.07 *Title to Property* - Upon the entry of a final decree, all assets of the Debtors shall be re-vested in the Debtors subject only to the outstanding liens which are not avoided by the Debtors.

13.08 *IRS Tax Lien* - Any tax liens filed by the IRS against the Debtors' Assets after the filing of the Debtors' petition, if not already released, shall be released from the Debtors' Assets within fifteen days after the Plan Confirmation Date.

13.09 *Pre-Payment Right* - Debtors reserve the right at any time to prepay any payment obligation under the Plan or component of such obligation in whole or in part without penalty and to designate the application of such pre-payment to such component. If a claim is being paid without interest under the Plan and the claim is subject to being discharged when the discharge order is entered, Debtors are entitled to a discount for any such early payment at rate of 3% per annum.

13.10 *Payment of Claims not Discharged* - If at the completion of payments for any class of claims under the Plan, a component of the such claim is not discharged and thereafter Debtors make payments on the non-dischargeable component of such claim, such payments shall not be considered payments under the Plan.

13.11 *Right to Cure*: If Debtors default on any payment obligation under the Plan, any such creditor aggrieved by such default in enjoined from commencing any action against the Debtors or the Debtors' property on account of such default until such creditor provides written notice of the nature of such default by certified mail to the Debtors mailing such notice to Debtors' accountant, Ronald J. Einwag at 20 Stanwix St. # 630, Pittsburgh, PA 15222, and by ordinary mail to Debtor's bankruptcy counsel, Gary W. Short, at 212 Windgap Road, Pittsburgh, PA 15237. Debtors shall have the right to cure any default on any plan obligation within fifteen (15) days of the receipt of the notice of default by Ronald J. Einwag and Debtors' counsel, Gary W. Short.

13.12 *Post-Confirmation Injunction:* The provisions of the Plan as confirmed bind the Debtors, any entity acquiring property under the Plan, and any creditor, whether or not they accepted the plan or their claim is impaired under the Plan. All claimants are enjoined from filing liens against all property of the Debtors for any claim which exists as of the Plan Confirmation Date. In any creditor violates the terms of the Plan, Debtors may file a motion to enforce the terms of the Plan and seek sanctions against such claimant as the Court may deem appropriate.

13.13 *Malpractice Claims* - Debtors may have accounting malpractice claims against Kenneth Gloor and Gloor & Company LLC for failure to inform the Debtors of the option to file separate income tax returns rather than joint returns to avoid Mary Cuervo becoming liable for Joseph Cuervo's tax liabilities. The value of the claims have not been determined. If it is determined that such claims are valuable and the Debtors want to file malpractice actions, such actions may be filed in a non-bankruptcy court without further Court approval.

13.14 *Plan Distribution Address* - The address to be used for plan distributions shall be the address listed on the Debtors' Schedules unless any such claimant provides notice of a different address. In that event the address provided by claimant will be used for plan distributions.

13.15 *Reconciliation of Claims*: The Debtors listed a $30,000 claim for **Revenue** on its Schedule F. Revenue filed a proof of claim for a general unsecured claim in the amount of $638.82 and a priority claim in the amount of $31,745. These claims absent an objection shall control as to the allowed claims of Revenue.

Debtors

/s/ Joseph Cuervo
Joseph Cuervo

/s/ Mary E. Cuervo
Mary E. Cuervo


/s/ Gary W. Short
Gary W. Short, Esquire   (PA Bar I.D. No. 36794)
212 Windgap Road, Pittsburgh, PA 15237
Tele. (412) 765-0100 / Fax (412) 536-3977
E-mail garyshortlegal@gmail.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) | Case No. 17-20492 GLT |
| ) | |
| JOSEPH CUERVO and MARY E. CUERVO, ) | Chapter 11 |
| ) | |
| Debtor. ) | |

### CERTIFICATE OF SERVICE

I, Gary W. Short, Esquire, do hereby certify that on the 23rd day of October, 2017, true and correct copies of the Debtor's Disclosure Statement, Plan of Reorganization, and Plan Summary were served by first class U.S. Mail, postage prepaid, on the following:

U. S. Trustee
Liberty Center
1001 Liberty Avenue
Suite 970
Pittsburgh PA   15222

Joseph Cuervo
Mary E. Cuervo
8000 Sherwood Drive
Presto, PA 15142

/s/ Gary W. Short
Gary W. Short, Esquire   (PA Bar I.D. No. 36794)
Counsel for the Debtor
212 Windgap Road, Pittsburgh, PA 15237
Tele. (412) 765-0100 / Fax (412) 536-3977
E-mailgaryshortlegal@gmail.com