Cuervo DS1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-20492 GLT |
| | ) | |
| JOSEPH CUERVO and MARY E. CUERVO, | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | |

**DISCLOSURE STATEMENT
TO ACCOMPANY PLAN DATED OCTOBER 23, 2017**

## Section 1 - Executive Summary of Plan

**Reasons for Chapter 11**: The Debtors were unable to negotiate a satisfactory payment plan with the IRS for a substantial federal tax liability. They were facing the immanent filing of a federal tax lien. The failure to stay the filing of the tax lien by a bankruptcy filing would make a reorganization of the Debtors' financial affairs more difficult. The primary reason for the Chapter 11 was to negotiate a payment plan for approximately $1,300,000 in federal and state tax claims.

**Reduction in Housing Costs**: To assist in their reorganization efforts, Debtors will sell their Residence to reduce their housing costs and fund a $50,000 payment on the Class 4 claim.

**Administrative Claims (Class 3)** are paid when due or, if required, on Court approval.

**Secured Claims (Classes 1 and 2)**: The Debtors have two secured claims, Class 1 and Class 2. Class 1 is a mortgage against the Residence which will paid according the contract until the Residence is sold when it will be paid in full. The Class 2 claim is an auto loan which will be paid in full in deferred payments.

**Unsecured Claims**: Class 4 (IRS non-priority taxes) and Class 5 (other non-priority claims).

**Class 4**: IRS shall be paid $150,000 on the PDD and $50,000 from the sale of the Residence within 240 days after the PDD with the unpaid balance *(excluding penalties)* paid with interest in 10 equal annual lump sum payments starting one year after the PDD *unless the IRS elects to have its Class 4 claim re-classified as a Class 5 claim.*

**Class 5**: If Class 5 claims total less than $100,000, such claims shall be paid either (a) 30% by a lump sum payment on the PDD or, (b) if such claimant elects, 100% with interest at 3.0% in 40 equal quarterly payments commencing on the PDD; provided however, if Class 5 Claims total at least $100,000 due to IRS election to have its Class 4 claim treated as a Class 5 claim, no election is available and all Class 5 claimants shall be paid 30% of their claim without interest in 120 equal monthly payments commencing on thirty days after the Plan Confirmation Date.

**Summary of the IRS Tax Treatment:** The IRS is to be paid 100% (exclusive on penalties) with interest if the IRS accepts the Class 4 treatment.

**0% Payment to Class 4 and Class 5 in a Chapter 7 Liquidation:** Debtors estimate Class 4 and Class 5 claims will not receive any distribution if this case were converted to a chapter 7.

**Equity Security Interests:** To be retained by Joseph Cuervo and Mary E. Cuervo.

1

## Section 2 - Definitions

The following terms, when used in this Disclosure Statement, will, unless the context otherwise indicates, have the following meanings, respectively:

2.01 **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 case allowed under Section 503(b) and 507(a)(1) of the Code.

2.02 **"Allowed Claim"** means a claim to the extent such claim is either (a) scheduled by the Debtor on its Schedules D, E, or F, not listed as contingent, unliquidated or disputed or (b) as otherwise been allowed by a final order or pursuant to the Plan.

2.03 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

2.04 **"Code"** means Title 11 of the United States Code, 11 U.S.C §101,et seq. as amended.

2.05 **"Claim"** has the meaning set forth in Section 101 of the Bankruptcy Code.

2.06 **"Class"** shall have the mean the category of holders of claims or equity interests in such category as provided by 11 U.S.C. Sec. 1122 of the Code, each such Class being more fully defined in Section III of the Plan.

2.07 **"Collateral"** means any property interest in the property of the Debtor's estate that is subject to a lien to secure the payment or performance of the claim which lien is not avoidable or otherwise invalid under the Code or state law.

2.08 **"Debtor" or "Debtors"** means Joseph Cuervo and Mary E. Cuervo.

2.09 **"Debtors' Assets" or "Debtors' Property"** means all real and personal property of the Debtors.

2.10 **"Disclosure Statement"** means this Disclosure Statement related to the Plan dated 10/23/2017.

2.11 **"Disputed"** means that portion or all of a claim that is not an allowed claim.

2.12 **"Exempt Property"** shall mean the Debtors' Assets which are exempt under 11 U.S.C. §522.

2.13 **"Final Court Approval"** means when all appeals relating to an Order entered by the Court are finally resolved.

2.14 **"General Unsecured Claim"** means a claim that it not an Administrative, Priority, or Secured Claim.

2.15 **"Lien"** has the meaning set forth in Section 101 of the Bankruptcy Code.

2.16 **"Medco"** is Medco Commercial Management Group, Inc. which is 50% owned by Joseph Cuervo. Medco is a construction services company which manages construction projects for property owners.

2.17 **"Personal Property"** shall mean all the Debtor's personal property listed on here Schedule B.

2.18 **"Plan"** means this Plan of Reorganization and any modifications and amendments.

2.19 **"Plan Confirmation Date" or "PCD"** means the date the order confirming the Plan becomes final and not subject to further appeal.

2.20 **"Plan Distribution Date" or "PDD"** shall mean the 90th after the Plan Confirmation Date.

2.21 **"Priority Claim"** means any claim that is entitled to priority in accordance with section 507(a) of the Bankruptcy Code, other than an administrative expense claim.

2.22 **"Secured Claim"** means any claim that is secured by a valid lien on the Debtors' property.

2.23 **"Residence"** means the Debtors' residence located at 8000 Sherwood Drive, Presto, PA 15142

## Section 3 – Disclosures

      Debtors, Joseph Cuervo and Mary E. Cuervo, furnish this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code 11 U.S.C. §1125 to assist them in evaluating Debtors' proposed Chapter 11 plan. Creditors may vote for or against the plan of reorganization. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing the time for balloting. The Court will schedule a hearing on the Plan pursuant to 11 U.S.C. §1129.

Address for return of ballots:

**Gary W. Short, Esquire
212 Windgap Road
Pittsburgh, Pa 15237**

## Section 4 – Background

A.     Name of Debtors: Joseph Cuervo and Mary E. Cuervo

B.     Type of Debtor: individuals.

C.     Debtors' Business or Employment: Joseph Cuervo works for Medco Commercial Management Group, Inc. (a construction management firm of which Joseph Cuervo is a 50% owner) and Mary Cuervo is a nurse.

D.     Debtors' Petition Date: February 9, 2017.

E.     Date of Conversion from Chapter 13 to Chapter 11 Commencement: March 27, 2017.

F.     Events that Caused the Filing: immanent threat of the IRS filing a federal tax lien against the Debtors.

F.     Anticipated Future of the Debtor and Source of this Information and Opinion: Both Debtors will continue in their current employment. Source of opinion: the Debtors.

G.     Are All Monthly Operating Statements Current and on File With The Clerk of Court? Yes X

H.     Does the plan provide for release of non-debtor parties? No.

I.     Identify all executory contracts that are to be assumed or assumed. None.

J.     Has a bar date been set? Yes.

K.     Specify property that will be transferred subject to 11 U.S.C. §1146: The Debtors intend to sell their Residence.

# Section 5

## Summary of Significant Plan Terms as to How Each Class of Creditors and Interests Will Be Paid and What Liens Will Be Retained or Granted.

A. The Plan creates the following classification of **impaired** claims:

Class 2 - JP Morgan Chase, N.A. security interest.

Class 4 - IRS non- priority tax claims.

Class 5 - Non-priority unsecured claims.

B. The Plan provides the following treatment of impaired claims:

**CLASS 2 - JP MORGAN CHASE BANK, N.A.** shall retain the lien which secures its Class 2 claim and be paid the balance owed on the Class 2 claim as of the Plan Confirmation Date according to either Treatment A or Treatment B:

**Treatment A**: Claimant shall be paid 100% of such claim with interest at 3.0% per annum in 72 equal monthly payments commencing on thirty days after the Plan Confirmation Date; or

**Treatment B**: If such claimant so designates on a timely filed ballot to elect to be paid according to Treatment B, Claimant shall be paid 100% of such claim with interest at 4.0% per annum in 48 equal monthly payments commencing thirty days after the Plan Confirmation Date.

**CLASS 4** - The allowed Class 4 claim of the **IRS** shall be paid according to either Treatment "A" or Treatment "B":

**Treatment A**

(1) If the IRS timely agrees to Treatment A, the IRS shall be paid $150,000 on the Plan Distribution Date ("PDD") and $50,000 from the sale of the Residence within 240 days after the PDD. These payments shall be applied first to pay taxes for the *oldest outstanding tax years related to such claim for which taxes are owed, then to the next oldest outstanding tax year and so on until all outstanding taxes are paid*. If any funds remain after payment of the taxes, the balance shall be applied to pay unpaid interest *in the same order of priority*.

(2) Thereafter the unpaid balance of the Class 4 claim, *excluding penalties*, shall be paid in equal annually lump sum payments for the next ten years commencing one year after the PDD in an amount sufficient to pay the indebtedness in full with interest at 4%.

(3) None of the payments shall be applied in payment of Class 4 penalty claims which shall be deem discharge when the Debtors are granted a discharge.

### Treatment B

If the IRS does not timely agree to be paid in accordance with Treatment A, its entire Class 4 claim shall be re-classified under the Plan as a Class 5 claim and be paid according to the treatment of Class 5 claims and the Class 4 claim classification under the Plan is void.

**CLASS 5** - The treatment of allowed **Class 5 Non-Priority Unsecured Claims, (which may or may not include the claim of the IRS which is listed as a Class 4 claim),** depends upon the total amount of allowed Class 5 claims:

### Class 5 Claims Total Less than $100,000

**A.** If the total amount of allowed Class 5 claims *(which shall not include the Class 4 IRS claim if the IRS agrees to be paid its Class 4 claim according to the Class 4 treatment)* is less than $100,000, a Class 5 claim shall be paid in full satisfaction of its claim, either:

(1) **30% Lump Sum Payment:** Claimants shall be paid a 30% lump sum payment on the Plan Distribution Date; or

(2) **100% with Interest in Deferred Payments**: If such claimant so elects on a timely filed ballot, such claimant shall be paid 100% of such claim with interest at 3.0% in 40 equal quarterly payments commencing on the Plan Distribution Date.

### Class 5 Claims Total at Least $100,000

**B.** If the total amount of allowed Class 5 claims total $120,000 or more *(which will be the case if the IRS chooses to have its Class 4 claim treated as a Class 5 claim)*, an allowed Class 5 claim shall be paid in full satisfaction of its claim, to the extent such claims are dischargeable, 30% of such claim without interest in 120 equal monthly payments commencing thirty days after the PCD.

## Section 6 - Creditors

### A. Secured Claims

| Creditor (Class) | Collateral | Claim | Arrearage | D* L U | Lien Retained Yes No |
|---|---|---|---|---|---|
| JP Morgan Chase (1) | Residence | 451,261 | 0 | L | Yes |
| JP Morgan Chase (2) | 2014 Jeep Laredo | 20,288 | 0 | L | Yes |
| | | 471,549 | | | |

* "D" means disputed, "L" means liquidated, and "U" means unliquidated.

5

## B. Priority Claims

| Creditor | Total Amount Owed | Basis of Claim | Status |
|---|---|---|---|
| Gary W. Short | 25,000 | Professional fees (est.) | Liquidated |
| Office of the U. S. Trustee | 1,250 | Statutory fees (est.) | Liquidated |
| IRS | 355,340 | Income taxes | Liquidated |
| PA Department of Revenue | 31,745 | Income taxes | Liquidated |
|  | 413,335 |  |  |

## C. Unsecured Claims

1. Amount Debtor Scheduled (Disputed and Undisputed)   1,230,336
2. Amount of Unscheduled Unsecured Claims*   0
3. Total Claims Scheduled or Filed   1,230,336
4. Amount Debtor Disputes (or corrected by proofs of claim)   255,787
5. Estimated Allowable Unsecured Claims   974,549

*Includes a.) unsecured claims filed by unscheduled creditors; b.) that portion of any unsecured claims filed by a scheduled creditor that exceeds the amount debtor scheduled; c.) any unsecured portion of any secured debt not previously scheduled; and d.) that portion of any secured claims filed or scheduled which the value of such claimant's collateral.

## Section 7 - Assets (values as of September 29, 2017)

| Assets | Value | Value Basis* | Lien Holder, Claim, Lien Position* | Equity |
|---|---|---|---|---|
| Bank deposits | 21,959 | A | None. | 21,959 |
| Residence | 620,000 | D | JP Morgan Chase | 213,369 |
| 2014 Jeep Laredo | 18,000 | D | JP Morgan Chase | 1,000 |
| 2006 Jeep Laredo | 1,000 | D | None | 1,000 |
| Household furnishing | 4,000 | D | None | 4,000 |
| Misc. | 8,400 | D | None | 7,400 |
| Medco stock* | 100 | D | None | 100 |
| IRA (M. Cuervo) | 319 | A | None | 319 |
| Pension (M. Cuervo) | 194,915 | A | None | 194,915 |
| Pension (M. Cuervo) | 49,463 | A | None | 49,463 |
| Malpractice claims*** | Unknown | D | None | Unknown |
|  | 918,156 |  |  | 493,525 |

\* "A" means actual. "D" means Debtors' opinions.

\*\* The valuation of Joseph Cuervo's 50% ownership in Medco Commercial Management Group, Inc. ("Medco") is based upon Medco being a construction service company with minimal tangible assets and receivables usually not worth more than current contractual obligations. His interest is not saleable because any purchaser would become a 50% owner with corporate control fixed and unalterable without the consent of the other 50% shareholder. A forced sale of this interest would be without a non-compete agreement which would enable Joseph Cuervo to compete against Medco in the future. For these reasons it is unlikely that anyone would buy his interest in Medco.

\*\*\*Debtors may have accounting malpractice claims against Kenneth Gloor and Gloor & Company LLC for failure to inform the Debtors of the option to file separate rather than joint tax returns to avoid Mary Cuervo becoming liable for Joseph Cuervo's tax liabilities. The value of the claims have not been determined. If it is determined that such claims are valuable and the Debtors want to file malpractice actions, such actions may be filed in a non-bankruptcy court without further Court approval.

A. Are any assets which appear on Schedule A or B of the petition not listed above? No.

B. Are any assets listed above claimed as exempt? Yes. See Exhibit "A" (exemption list).

## Section 8 – Summary of Plan

A. **Distribution Date of Plan**: ninety days after the plan confirmation date.

B. **Treatment of Claims Under the Plan:**

### 1. Secured Claims

| Creditor | CL. | Claim | Summary of Proposed Treatment |
|---|---|---|---|
| JP Morgan Chase | 1 | 451,261 | Paid according to contract terms. |
| JP Morgan Chase | 2 | 20,288 | Paid in full with interest (3%) in 72 monthly payments commencing 30 days after the PCD unless Claimant elects to be paid in 48 monthly payments with interest (4%). |
|  |  | 471,549 |  |

### 2. Priority Claims

| Name of Creditor \* | Amount Owed | Type of Debt | Summary of Proposed Treatment |
|---|---|---|---|
| Gary Short | 25,000 | Legal fees (est.) | 100% upon Court approval |
| UST Fees | 1,250 | Statutory fees | 100% within 30 days after the PCD. |
| IRS | 355,340 | Income taxes | 100% with interest (4%) in 72 monthly payments starting 30 days after the PCD. |
| PA Revenue | 31,745 | Income taxes | 100% with interest (4%) in 72 monthly payments starting 30 days after the PCD. |

7

| TOTAL | 413,335 | | |
|---|---|---|---|

### 3. Unsecured Non-Priority Federal Tax Claims

| Creditor | CL. | Claim | Summary of Proposed Treatment |
|---|---|---|---|
| IRS | 4 | 402,954 tax<br>137,514 interest<br>365,313 penalties<br>905,781* | $150,000 on PDD and $50,000 from the sale of the Residence within 240 days after the PDD to applied first to tax and then to interest; balance of tax and interest to be paid in 10 annual payments with interest (4%) starting 1 years after the PDD; no payments shall be made on the penalty; and IRS must accept treatment. If not, claim shall be moved to Class 5. |

* A dispute exists as to the allowed amount of the IRS's Class 4 claim.

### 4. Other Non-Priority Unsecured Claims*

| Creditor | Claim Source | Claim Amount Non-Insider | Claim Amount Insider | Amount of Distribution |
|---|---|---|---|---|
| Name | Source | Amount | Amount of Distribution (30%)* | Percentage Dividend |
| Capital One | S | 3,250 | 975 | 30% or 100% |
| Capital One | S | 728 | 219 | 30% or 100% |
| Chase Card Services | S | 4,627 | 1388 | 30% or 100% |
| Citibank/Sunoco | S | 168 | 51 | 30% or 100% |
| Citibank/CBNA | S | 18,347 | 5504 | 30% or 100% |
| Discover Bank | P | 9401 | 2820 | 30% or 100% |
| Discover Personal Loans | P | 29,334 | 8800 | 30% or 100% |
| PA American Water | P | 54 | 16 | 30% or 100% |
| PNC Bank | P | 1,996 | 599 | 30% or 100% |

| PA Department of Revenue | P | 639 | 192 | 30% or 100% |
|---|---|---|---|---|
| Visa Department Store Nat. Bank | S | 224 | 67 | 30% or 100% |
| TOTAL | | 68,768 | 20,631 | |

\* It is estimated that Class 5 will be paid the 30% distribution. If the IRS elects to have its Class 4 claim of $905,781 treated as a Class 5 claim, Class 5 claims will total $974,549 and will be paid 30% in 120 equal monthly payments.

F. **Will periodic payments be made to unsecured creditors?** Yes.

   1. Class 4 will be paid a lump sum payment of $150,000 on the PDD, $50,000 within 240 days after the PDD, and 10 equal annual payments with interest at 4% beginning 1 years after the PDD.

   2. Class 5 will be paid in full satisfaction of such claims **one of three ways**:

      a. **If Class 5 Claims Total Less than $100,000**, Class 5 claim shall be paid 30% lump sum payment on the Plan Distribution Date unless "b" below applies:

      b. **If Class 5 Claims Total Less than $100,000** and any such claimant elects this treatment on a timely filed ballot, such claimant shall be paid 100% of such claim with interest at 3.0% in 40 equal quarterly payments commencing on the Plan Distribution Date; **however, (see "c" below)**;

      c. **If Class 5 Claims Total at Least $100,000** (due to IRS election to have its Class 4 claim treated as a Class 5 claim), the only treatment available to Class 5 is for such claims to be paid 30% without interest in 120 equal monthly payments commencing thirty days after the Plan Confirmation Date.

G. **State source of funds for plan payments**: Current bank deposits, future earnings, and sale of Residence.

H. **Other significant features of the plan:** None.

## Section 9 - Comparison of Plan with Chapter 7 Liquidation

If Debtors' proposed plan is not confirmed, the potential alternatives would include a proposal of a different plan, if the Court so permitted, a dismissal of the case, or conversion of the case to Chapter 7. If this case is converted to Chapter 7, a trustee will be appointed to liquidate the debtor's non-exempt assets. In this event, all secured claims and priority claims, including all expenses of administration, must be paid in full before any distribution is made to unsecured claimants as explained below:

1. Total value of Chapter 7 estate (see Section 7)                               918,156

2. Less abandoned over-encumbered property  (2014 Jeep)                   18,000

9

| | | |
|---|---|---:|
| 3. | Property to be Administered by Ch. 7 Trustee | 900,156 |
| | Less secured claims | 451,262 |
| | Less exemptions | 302,845 |
| | Less administrative expenses (ch. 7 and ch. 11) | 35,000 |
| | Less other priority claims | 387,085 |
| | Subtotal | 1,176,192 |
| 4. | Total Amount Available for Distribution to Unsecured Creditors | 0 |
| 5. | Divided by total (estimated) allowable unsecured claims of: | 978,844 |
| 6. | Percentage of Dividend to Unsecured Creditors: | 0% |

Will the creditors fare better under the plan than they would in a Chapter 7 liquidation? Yes. Under the Plan Class 4 claimant will be paid 59.9% of it claim with interest and Class 5 claimants will be paid either 30% or 100% of their claims. In a Chapter 7 Class 4 and Class 5 unsecured claimants would **not** receive any distributions.

## Section 10 - Feasibility

A. Attached as Exhibit "B" is a plan payment summary.

B. Attached as Exhibit "C" are estimates of the Debtors net income after taxes, their living expenses for the year based upon current expenses, and funds available to make their plan payments for 2018. The projection assumes that Joseph Cuervo receives $298,000 in 2018 in taxable income from Medco Commercial Management Group, Inc. The projection was prepared by Ronald J. Einwag, CPA, with deductions being estimated based upon the Debtors' 2016 federal tax return.

C. Attached as Exhibit "D" are:

(1) An historical summary of the Debtors' monthly income and expenses from the Debtors' monthly operating reports filed with the Court for the period of February 9, 2017 through September 30, 2017 (a $22,000 distribution Mary Cuervo received from her father's probate estate is excluded from the income totals).

(2) A projected summary for the first 12 months of the Debtors' plan; and

(3) A plan feasibility statement which compares the Debtors' anticipated funds available for plan payments and the estimated plan payments for the first 12 months of the Debtors' plan.

D. Amounts to be paid on the plan distribution date: $180,320. The basis of this estimate is:

| | |
|---:|---|
| 2,629 | Secured Clams |
| 11,000 | Administrative Class ($25,000 less $14,000 escrow with Counsel) |
| 5560 | IRS priority tax claim |
| 497 | PA Revenue priority tax claim |
| 150,000 | Class 4 unsecured claims |

|  |  |
|---|---|
| 11,309 | Class 5 unsecured claims (50% elects 100% treatment) |
| 325 | U.S.Trustee Fees |
| 180,320 | TOTAL |

D. **What assumptions are made to justify the increase in cash available for the funding of the plan?**

Joseph Cuervo anticipates a substantial draws from Medco in February, 2018 sufficient to fund the payments due on the PDD.

E. **Will funds be available to pay administrative expenses in full on the plan distribution date?** Yes. From what source? Current cash and escrow payments to Counsel during the Chapter 11 which as January 31, 2017, should total 14,000.

F. **Current Cash on hand:** $21,959 *as of September 29, 2017 (checking account statement is attached as Exhibit "E").*

Estimated Cash on date of Plan Confirmation Date: $30,000.

Estimated cash on Plan Distribution Date: $225,000.

## Section 11 - Management Salaries

| Position/Name of Person Holding Position | Salary at Time of Filing | Proposed Salary (Post-Confirmation) |
|---|---|---|
| Joseph Cuervo | 1,042,890 (2016) | 300,000 |
| Mary Cuervo | 77,568 | 77,568 |

## Section 12 - Identify Effect on Plan Payments

A. **What, if any, Litigation is Pending?** None.

B. **What, if any, Litigation is Proposed or Contemplated?**

(1) Possible objection to the claim of the IRS. If such an objection were successful, the IRS claim may be reduced by approximately $95,000.

(2) Debtors may have accounting malpractice claims against Kenneth Gloor and Gloor & Company LLC for failure to inform the Debtors of the option to file separate rather than joint income tax returns to avoid Mary Cuervo becoming liable for Joseph Cuervo's tax liabilities. The Debtors have not received a legal opinion of the value of such claims nor has a decision been made as to whether to pursue such claims.

11

## Section 13 - Certification

We, Joseph Cuervo and Mary E. Cuervo, certify that the information herein is true and correct to the best of our knowledge and belief formed after reasonable inquiry. Signature of counsel is required by the Court and is not a certification of the factual accuracy this document.

/s/ Joseph Cuervo                    /s/ Mary E. Cuervo

/s/ Gary W. Short
Gary W. Short, Esquire (PA Bar. No. 36794)
Counsel for Debtors
212 Windgap Road, Pittsburgh, PA 15237
Tele. (412) 765-0100 / Fax (412) 536-3977
E-mail garyshortlegal@gmail.com

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | Joseph | | Cuervo |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Mary | E. | Cuervo |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA | | |
| Case number (if known) | 17-20492 | | |

☒ Check if this is an amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt                    4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:  Identify the Property You Claim as Exempt

1. Which set of exemptions are you claiming? *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☒ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own Copy the value from Schedule A/B | Amount of the exemption you claim Check only one box for each exemption | Specific laws that allow exemption |
|---|---|---|---|
| 9000 Sherwood Drive Presto, PA 15142  Allegheny County Parcel I.D. 199-H-26 Line from *Schedule A/B*: 1.1 | $620,000.00 | ☒ $47,350.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(1) |
| Household furnishings Line from *Schedule A/B*: 6.1 | $4,000.00 | ☒ $4,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Misc. Collectiables Line from *Schedule A/B*: 8.1 | $800.00 | ☒ $800.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Misc. sports equipment Line from *Schedule A/B*: 9.1 | $1,000.00 | ☒ $1,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Clothing Line from *Schedule A/B*: 11.1 | $200.00 | ☒ $200.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |

| Brief description of the property and line on Schedule A/B | Current value of the portion you own | | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|---|
| Cloting<br>Line from Schedule A/B: 11.2 | $200.00 | ☒<br>☐ | $200.00<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(3) |
| Misc. Jewelry<br>Line from Schedule A/B: 12.1 | $1,200.00 | ☒<br>☐ | $1,200.00<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(4) |
| Cash<br>Line from Schedule A/B: 16.1 | $30.00 | ☒<br>☐ | $30.00<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Checking: Wesbanco<br>Line from Schedule A/B: 17.1 | $1,692.65 | ☒<br>☐ | $1,692.65<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Checking: First National Bank<br>Line from Schedule A/B: 17.2 | $536.80 | ☒<br>☐ | $536.80<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Checking: PNC<br>Line from Schedule A/B: 17.3 | $40.00 | ☒<br>☐ | $40.00<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| Medco Commercial Management Group, Inc.<br>50%<br>Line from Schedule A/B: 19.1 | $100.00 | ☒<br>☐ | $100.00<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(5) |
| IRA:<br>Line from Schedule A/B: 21.1 | $318.89 | ☒<br>☐ | $318.89<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| UMPC Savings Pension Plan: UPMC<br>Line from Schedule A/B: 21.2 | $194,914.71 | ☒<br>☐ | $194,914.71<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(12) |
| UPMC Cash Balance Pension Plan: UPMC<br>Line from Schedule A/B: 21.3 | $49,462.84 | ☒<br>☐ | $49,462.84<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(10)(E) |
| Hand tools<br>Line from Schedule A/B: 53.1 | $1,000.00 | ☒<br>☐ | $1,000.00<br>100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 522(d)(6) |

TOTAL  $302,645.89

3. Are you claiming a homestead exemption of more than $160,375?
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)
   ☒ No
   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
      ☐ No
      ☐ Yes

**EXHIBIT "C"**
**Joseph Cuervo and Mary E. Cuervo**
**Estimate of Funds Available for Plan Payments in 2018**

| Gross Income | Annual |
|---|---|
| Joseph Cuervo | 298,000 |
| Mary Cuervo | 77,568 |
| **Total Gross Income** | 375,568 |
| | |
| **Less income taxes** | |
| Federal | 74,404 |
| State | 11,530 |
| Local | 1,255 |
| **Total Income Taxes** | 97,189 |
| | |
| **Net Income After Taxes** | 288,379 |
| | |
| **Less Estimated Living Expenses** | 138,372 |
| | |
| **Funds Available for Plan Payment** | 150,007 |
| | |
| **Annual Plan Payments** | 145,635 |

Plan Payment Table Cuervo final

APPENDIX "D"

PLAN PAYMENT SUMMARY

| C L A S S | Creditor | Debt | Int. Rate | Term (mos.) | Months 1-72 | Months 73-120 |
|---|---|---|---|---|---|---|
| 1 | JP Morgan Chase | 451,271 | CR | CT | 2,771.98 | 2,771.98 |
|   |   |   |   |   | 0.00 | 0.00 |
| 2 | JP Morgan Chase | 20,288 | 3% | 72 | 308.25 | 0.00 |
|   |   |   |   |   | 0.00 | 0.00 |
| 3 | IRS | 355,340 | 4.0 | 72 | 5,559.36 | 0.00 |
|   | PA Revenue | 31,745 | 4.0 | 72 | 496.66 | 0.00 |
|   |   |   |   |   | 0.00 | 0.00 |
| 4 | IRS N-D Tax* | 402,954 | 4.0 | 120 | 0.00 | 0.00 |
|   | IRS N-D Interest* | 137,514 | 4.0 | 120 | 0.00 | 0.00 |
|   | IRS Disc. Penalty | 365,313 | 0 | 0 | 0.00 | 0.00 |
|   |   |   |   |   | 0.00 | 0.00 |
| 5 | Unsec. 30% cash out** | 68,678 | 0 | PDD | 0.00 | 0.00 |
|   |   |   |   |   | 9,136.25 | 2,771.98 |
|   |   |   |   |   |   |   |
|   | + Annual 36,000 ÷ 12 |   |   |   | 3,000.00 | 3,000.00 |
|   |   |   |   |   |   |   |
|   | Monthly and annual |   |   |   | 12,136.25 | 5,771.98 |

\* $150,000 is be paid on the Plan Distribution Date ("PDD") and $50,000 is to be paid within 210 days after the PDD from the sale of the Debtors' Residence which leaves $340,000 which is paid with interest at 4% in ten annual payments beginning one year after the PDD.

\*\* $20,603 to be paid on PDD.

## HISTORICAL SUMMARY (see endnote 1)

| Post-Petition Periods | Month 1* | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | | | Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Total Cash Flow From Operations** | 18133 | 28107 | 10123 | 15925 | 15146 | 12547 | 19029 | 16798 | | = 235,788 | 16,973* |
| 2. Less Total Disbursements Excluding Payments to Creditors*** | 11955 | 20456 | 4071 | 10219 | 5187 | 11973 | 10702 | 12381 | | = 86,944 | 10,868 |
| 3. Total Net Cash Flow | 6179 | 7651 | 6052 | 5706 | 9939 | 574 | 8327 | 4417 | | = 48,848 | 6,105 |

## PROJECTED SUMMARY

| Post-Petition Periods | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Mo. 10 | Mo. 11 | Mo. 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4. Total Projected Cash Flow From Operations**** | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 | 22,500 |
| 5. Less Total Projected Disbursements Excluding Payments to Creditors in a plan***** | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| 6. Anticipated Cash Flow Available for Plan | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |

## PLAN FEASIBILITY

| Post-Petition Periods | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Mo. 10 | Mo. 11 | Mo. 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Anticipated Receipts Available for Plan (see line 6 above) | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| Less Proposed Plan Payments (see section IV) | 12,137 | 12,137 | 12,137 | 12,137 | 12,127 | 12,137 | 12,137 | 12,137 | 12,137 | 12,137 | 12,137 | 12,137 |
| Overage (shortage) of Cash Flow Available to Fund Plan | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 | 363 |

* February 2017. **Total Cash Flow From Operations means the total amount of funds collected in a specific period from cash sales, collection of accounts receivable, and other income excluding loan proceeds, cash contributions from insiders, and sales tax collected. ***Total Disbursements Excluding Payments to Creditors in a Plan means the total disbursements in a specific period for production costs, general and administrative costs, excluding payments to creditors to be paid under the terms of the plan. **** Total Projected Cash Flow Available From Operations means the total of projected funds collected in a specific period from cash sales, collection of accounts receivable, and other income excluding loan proceeds, cash contributions from insiders, and sales tax collected. ***** Total Disbursements Excluding Payments to Creditors in a Plan means the total projected disbursements in a specific period for production costs, general and administrative costs, excluding payments to creditors to be paid under the terms of the proposed plan.

1. Joseph Cuervo's income during the chapter 11 from his employer, Medco Commercial Management Group, Inc. is not typical. Medco supervises construction projects. From February 9, 2017 to September 30, 2017, his income from Medco was approximately $10,000 per month due to the completion rate on a Medco contract; i.e. draws depends upon the state of completion of a project as the lender will only permit draws when a certain phase of the project is completed. The level of draws in 2017 was low. Joseph Cuervo expects to receive taxable income from Medco on an annual basis of approximately $300,000 which after taxes should net about $222,000 for an average monthly after tax net of $18,500. Mary Cuervo average monthly net is $4,000. Together the Debtors project $22,500 after tax income per month in 2018 and beyond.

EXHIBIT "F"

# First National Bank

4140 E. State Street
Hermitage, PA 16148

ADDRESS SERVICE REQUESTED

JOSEPH CUERVO JR
MARY E CUERVO
CH 11 DIP ACT NO 17-20492 GLT
8000 SHERWOOD DR
PRESTO PA 15142-1078

**Statement Ending 09/29/2017**
JOSEPH CUERVO JR   Page 1 of 8
Primary Account Number: 7610

**Managing Your Accounts**
- Online — www.fnb-online.com
- By Phone — 1 800-555-5455
- By Mail — 4140 E. State Street, Hermitage, PA 16148

## Summary of Accounts

| Account Type | Account Number | Balance This Statement |
|---|---|---|
| WORKPLACE FIRST | 7610 | $21,959.96 |

## WORKPLACE FIRST - 7610

### Account Summary

| Date | Description | Amount | | |
|---|---|---|---|---|
| 09/01/2017 | Balance Last Statement | $2,404.64 | Minimum Balance | $773.05 |
| | 14 Credit(s) This Period | $36,944.84 | Average Ledger Balance | $11,618.13 |
| | 121 Debit(s) This Period | $17,389.52 | Average Available Balance | $9,942.15 |
| 09/29/2017 | Balance This Statement | ✓ $21,959.96 | | |
| | Service Charges | $5.00 | | |

### Account Activity

| Post Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 09/01/2017 | Balance Last Statement | | | $2,404.64 |
| 09/01/2017 | DEPOSIT | | $6,500.00 | $8,904.64 |
| 09/01/2017 | Medco Commercial PAYROLL 000200 | | $2,259.56 | $11,164.20 |
| 09/01/2017 | 69468 POS PUR 08/31 05:23 ALLEN EDMONDS EC 262-235-2385 WI 00000000 069~5661 | $170.00 | | $10,994.20 |
| 09/01/2017 | 892841 PIN PUR 08/31 20:35 Wal-Mart Store SCOTT TWP PA 50400016 72448591~5411 | $168.37 | | $10,825.83 |
| 09/01/2017 | UNIV OF PGH PHYS MEDICAL 1102229 | $48.10 | | $10,777.73 |
| 09/01/2017 | 41214 POS PUR 09/01 13:48 GET GO #3668 Seven Fields PA 68023100 529513 ~5541 | $40.52 | | $10,737.21 |
| 09/01/2017 | 23853 PIN PUR 09/01 10:50 PRESTO QWIK STOP PRESTO PA 05364984 724498262~5499 | $17.56 | | $10,719.65 |
| 09/05/2017 | 52584 PIN PUR 09/02 15:13 SAMS CLUB #6575 PITTSBURGH(W) PA 65750012 863~5300 | $245.57 | | $10,474.08 |
| 09/05/2017 | 3130 ATM WTD 09/03 12:36 FIRST NAT BANK CARNEGIE PA PA900030 003130 ~6011 | $220.00 | | $10,254.08 |
| 09/05/2017 | 80034 POS PUR 09/02 15:05 CAPRETTI & CO PITTSBURGH PA 78463843 080034 ~7230 | $55.64 | | $10,198.44 |
| 09/05/2017 | 926314 PIN PUR 09/02 13:52 Barnes and Nobl Pittsburgh PA 99999999 926314~5814 | $40.53 | | $10,157.91 |

Member FDIC

Cuervo DS1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 17-20492 GLT** |
| | ) | |
| **JOSEPH CUERVO and MARY E. CUERVO,** | ) | **CHAPTER 11** |
| | ) | |
| **DEBTORS.** | ) | |

**CERTIFICATE OF SERVICE**

  I, Gary W. Short, Esquire, do hereby certify that on the day of October 23, 2017, true and correct copies of the Debtors' Chapter 11 Plan of Reorganization, Disclosure Statement, and Plan Summary were served by first class U.S. Mail, postage prepaid, on the parties listed below:

Office of the U. S. Trustee
Suite 970
1001 Liberty Avenue
Pittsburgh PA 15222

Joseph Cuervo
Mary E. Cuervo
8000 Sherwood Drive
Presto, PA 15142

          /s/ Gary W. Short
          Gary W. Short, Esquire   (PA Bar I.D. No. 36794)
          Counsel for the Debtor
          212 Windgap Road, Pittsburgh, PA 15237
          Tele. (412) 765-0100 / Fax (412) 536-3977
          E-mailgaryshortlegal@gmail.com