Cuervo amended plan 5

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-20492 GLT |
| | ) | |
| JOSEPH CUERVO and MARY E. CUERVO, | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | |

## AMENDED PLAN OF REORGANIZATION

(filed December 12, 2017)

TO ALL PARTIES IN INTEREST OF JOSEPH CUERVO and MARY E. CUERVO, DEBTORS HEREIN.

WHEREAS, this is an Amended Plan of Reorganization ("Plan") which was filed by the Debtors, JOSEPH CUERVO and MARY E. CUERVO ("Debtors"), on December 12, 2017;

WHEREAS, Debtors filed a petition for relief under Chapter 13 of the Bankruptcy Code on February 9, 2017. The case was converted to chapter 11 on March 27, 2017;

WHEREAS, such reorganization under this Plan will tend to rehabilitate the financial status of the Debtors and will be in the best interest of their creditors.

NOW THEREFORE, Debtors propose in compliance with 11 U.S.C. §1121, et a seq. the following Plan of Reorganization which comprises the following section articles:

Section     I   -   Definitions

Section     II  -   Summary of Classification of Claims and Interests

Section     III -   Classification of Claims and Interests

Section     IV  -   Claims Which Are Not Classified Under the Plan

Section     V   -   Treatment of Unimpaired Claims and Interests

Section     VI  -   Treatment of Non-Classified Priority Tax Claims

Section     VII -   Treatment of Impaired Claims

Section    VIII -   Means for Implementation of the Plan

Section     IX  -   Sale of Residence

Section     X   -   Provisions for Claims and Equity Security Interests Generally

Section     XI  -   Discharge and Final Decree

Section     XII -   Retention of Jurisdiction

Section    XIII -   Miscellaneous Provisions

# I. Definitions

The following terms, when used in this Plan of Reorganization, will, unless the context otherwise indicates, have the following meanings, respectively:

1.01 **"Administrative Expense Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 case allowed under Section 503(b) and 507(a)(1) of the Code.

1.02 **"Allowed Claim"** means a claim to the extent such claim is either (a) scheduled by the Debtor on its Schedules D, E, or F, not listed as contingent, unliquidated or disputed or (b) as otherwise been allowed by a final order or pursuant to the Plan.

1.03 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

1.04 **"Code"** means Title 11 of the United States Code, 11 U.S.C §101,et seq. as amended.

1.05 **"Claim"** has the meaning set forth in Section 101 of the Bankruptcy Code.

1.06 **"Class"** shall have the mean the category of holders of claims or equity interests in such category as provided by 11 U.S.C. Sec. 1122 of the Code, each such Class being more fully defined in Section III of the Plan.

1.07 **"Collateral"** means any property interest in the property of the Debtors' estate that is subject to a lien to secure the payment or performance of a claim which lien is not avoidable or otherwise invalid under the Code or state law.

1.08 **"Debtor "** means JOSEPH CUERVO and MARY E. CUERVO.

1.09 **"Debtors' Assets"** means all assets of the Debtor including the Debtors' real and personal property.

1.10 **"Disclosure Statement"** means the Disclosure Statement related to the Plan and approved by the Court.

1.11 **"Disputed"** means that portion or all of a claim that is not an allowed claim.

1.12 **"Exempt Property"** shall mean the Debtors' Assets.

1.13 **"Final Court Approval"** means when all appeals relating to an Order entered by the Court are finally resolved.

1.14 **"General Unsecured Claim"** means a claim that it not an Administrative, Priority, or Secured Claim.

1.15 **"Lien"** has the meaning set forth in Section 101 of the Bankruptcy Code.

1.16 **"New Residence"** shall mean the residential property the Debtors intend to build in West Virginia.

1.17 **"Personal Property"** shall mean all the Debtor's personal property listed on here Schedule B.

1.18 **"Plan"** means this Amended Plan of Reorganization filed on December 12, 2017 and any modifications and amendments.

1.19 **"Plan Confirmation Date"** means the date the order confirming the Plan becomes final and not subject to further appeal.

1.20 **"Plan Distribution Date"** or **"PDD"** shall mean the 90th after the Plan Confirmation Date.

1.21 **"Plan Effective Date**" means the 30th day after the Plan Confirmation Date.

1.22 **"Priority Claim"** means any claim that is entitled to priority in accordance with section 507(a) of the Bankruptcy Code, other than an administrative expense claim.

1.23 **"Secured Claim"** means any claim that is secured by a valid lien on the Debtors' property.

1.24 **"Residence"** means the Debtors' residence located at 8000 Sherwood Drive, Presto, PA 15142

## Section II.  Summary of Classification of Claims and Interests

    2.01    Class 1  - JP Morgan Chase, N.A. mortgage against Residence.[Not-Impaired]

    2.02    Class 2  - JP Morgan Chase, N.A.  security interest in vehicle.  [Impaired[

    2.03    Class 3  - IRS non- priority tax claims.                    [Impaired]

    2.04    Class 4  - Non-priority unsecured claims.                [Impaired]

    2.05    Class 5 -  Equity security interests.                     [Unimpaired]

## Section III. Classification of Claims and Interests

    3.01    **CLASS 1** -  The secured claim of the **JP MORGAN CHASE BANK, N.A.** as set forth in proof of claim No. 3 which is secured by a first mortgage against the Residence to the extent that such claim is an allowed, non-voidable, and unavoidable secured claim under the Code.

    3.02    **CLASS 2** -  The secured claim of **JP MORGAN CHASE BANK, N.A.**  which is secured by a security interest in the Debtors' 2014 Jeep Grand Cherokee to the extent that such claim is an allowed, non-voidable, and unavoidable secured claim under the Code.

    3.03    **CLASS 3** - All claims for administrative expenses by Debtors' counsel, **Gary W. Short,** the **Office of the United States Trustee**, the **Clerk's Office of the Bankruptcy Court**, and other claimants whose claims are allowed under section 503 of the Code and entitled to priority under §507(a) of the Code.

    3.04    **CLASS 4** -  The non-priority unsecured claims of the **Internal Revenue Service ("IRS")** claim which are an allowed non-priority unsecured claims under the Code.

    3.05    **CLASS 5** -  All *allowed* **non-priority unsecured claims** under the Code other than allowed Class 4 claims unless the IRS elects to have its Class 4 claim treated as a Class 5 claim.

    3.06    **CLASS 6** - All equity security interest of the Debtors.

## Section IV.  Non-Classified Claims

3.07    **IRS** - The priority tax claims of the **IRS** to the extent such claims are allowed priority claims under the Code.

3.08    **REVENUE**  - The priority tax claims of **Revenue** to the extent such claims are allowed priority claims under the Code.

## Section V.  Treatment of Unimpaired Claims and Interests

5.01    All claims against or interests in the Debtors are impaired under the Plan with the exception of the Classes 1, 3, and 6.

5.02    **CLASS 1** - The Class 1 claimant, **JP MORGAN CHASE BANK, N.A.** shall retain the lien which secures such claim and be paid a 100% of such claim in accordance the terms of the contract upon which such claim based and applicable state law.

5.03    **CLASS 3** - Class 3 administrative claims shall be paid upon Court approval.

5.04    **CLASS 6** - Class 6 equity security interests which shall be retained by Debtors and are unaffected by the Plan.

## Section VI. Treatment of Non-Classified Tax Claims

6.01    **Non-Classified Claims**: The allowed priority tax claims of the IRS and Revenue are not classified under the Plan. The IRS priority claim shall be paid in full in seventy two equal monthly payments with interest at four percent per annum with payments commencing on the Plan Effective Date. The Revenue priority claim shall be paid in full in sixty equal monthly payments with interest at four percent per annum with payments commencing on the Plan Effective Date.

## Section  VII. Treatment of Impaired Claims

7.01    **CLASS 2** - **JP MORGAN CHASE BANK, N.A.** shall retain the lien which secures its Class 2 claim and be paid the balance owed on the Class 2 claim as of the Plan Confirmation Date according to subparagraph "a" or subparagraph "b" below:

    a.     **Treatment A**: Claimant shall be paid 100% of such claim with interest at 3.0% per annum in 72 equal monthly payments commencing thirty days after the Plan Confirmation Date; or

    b.     **Treatment B**: If such claimant so designates on a timely filed ballot to elect to be paid according to Treatment B, Claimant shall be paid 100% of such claim with interest at 4.0% per annum in 48 equal monthly payments commencing thirty days after the Plan Confirmation Date.

7.03    **CLASS 4** - The allowed Class 4 claim of the **IRS** shall be paid in accordance with Treatment "A" or Treatment "B" as set forth below:

### Treatment A

(1) If the IRS accepts Treatment A, the IRS shall be paid $150,000 on the Plan Distribution Date ("PDD") and $50,000 from the sale of the Residence within 240 days after the PDD. These payments shall be applied first to pay taxes for the *oldest outstanding tax years related to such claim for which taxes are owed, then to the next oldest outstanding tax year and so on until all outstanding taxes are paid*. If any funds remain after payment of the taxes, the balance shall be applied to pay unpaid interest *in the same order of priority*.

(2) Thereafter the unpaid balance of the Class 4 claim, *excluding* penalties ("Unpaid Balance"), shall be paid in equal annually lump sum payments for the next ten years commencing one year after the PDD in an amount sufficient to pay the indebtedness in full with interest at 4%. Any prepayment made of the Unpaid Balance shall reduce the amount of the remaining annual payments proportionately.

(3) None of the payments shall be applied in payment of Class 4 penalty claims which shall be deem discharged when the Debtors are granted a discharge.

### Treatment B

If the IRS does not accept Treatment A, its Class 4 claim shall be re-classified under the Plan as a Class 5 claim and be paid according to the treatment of Class 5 claims and the Class 4 claim classification under the Plan is void.

7.04    **CLASS 5** - The treatment of allowed **Class 5 Non-Priority Unsecured Claims, (which may or may not include the claim of the IRS which is listed as a Class 4 claim),** depends upon the total amount of allowed Class 5 claims as explained below.

                **Class 5 Treatment** *If Total Class 5 Claims <u>Are Less</u> than $100,000*

A. <u>*100% Deferred Payments or 30% Cash Out*</u>: If the total amount of allowed Class 5

claims is less than $100,000 *(which will be the case if the IRS accepts its Class 4 treatment), a Class 5* claimant shall be paid, in full satisfaction of its claim, either:

(A)(1) **100% with Interest in Deferred Payments**: 100% of such claim with interest at 4.0% in 40 equal quarterly payments commencing on the Plan Distribution Date; or

(A)(2) **30% Lump Sum Payment:** If a Class 5 claimant elects on a timely filed ballot to be paid 30%, claimant shall be paid a 30% lump sum payment on the Plan Distribution Date.

### Class 5 Treatment *If Total Class 5 Claims Are At Least $100,000*

B.  *30% in Deferred Payments*: If the amount of all allowed Class 5 claims total $100,000 or more *(which will be the case if the IRS's Class 4 claim is treated as a Class 5 claim)*, an allowed Class 5 claim shall paid, in full satisfaction of its claim, to the extent such claim is dischargeable, 30% of such claim without interest in 120 equal monthly payments commencing on the Plan Effective Date.

### Malpractice Claim Recovery

C. *Malpractice Claims*: Debtors may have accounting malpractice claims against Kenneth Gloor and Gloor & Company, LLC. The value of the claims have not been determined. Such actions may be prosecuted in a non-bankruptcy court without further Court approval. If the Debtors obtain a recovery on such claims, after payment of or reimbursement of Debtors' legal fees and expenses, up to 50% of net recovery shall be paid to Class 5 claimants who are to be paid 30% under paragraph on a pro rata basis to the extent necessary to pay such claims in full and the remainder shall be retained by the Debtors.

## Section VIII. Means for Implementation of the Plan

8.01    *Implementation*: The Plan will be funded by the Debtors' future earnings and a sale of their Residence.

8.02    *Litigation Necessary to Consummate Plan:* Debtors believe that the IRS has failed to give full credit for certain restitution payments made for tax years 2008, 2009, 2010, 2011  If the Debtors and the IRS cannot agree upon the IRS's allowed claims, Debtors will file an objection to the IRS's claims.

## Section IX.  Sale of Residence

9.01    *Sale of Residence:* Debtors intend to sell the Residence and use the net proceeds from the sale to make a $50,000 lump sum payment to the IRS on its Class 4 claim and build an smaller residence to lower their housing costs. Debtors are authorized to sell the Residence after the entry of a final decree by private sale without the necessity of any further Court authorization including authorization under 11 U.S.C. Sec. 363.

9.02    *Applicability of 11 U.S. Code Sec. 1146:* The sale of the Residence is subject to Section 1146(a) of the Code provides:

> "(a) The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax."

Accordingly the sale of the Residence and recording of the deed related thereto shall not be subject to real estate transfer taxes and neither the Debtors nor the buyers of the Residence shall be obligated to pay such tax provided the sale closes within 365 days after the entry of a final decree.

## Section X.
## Provisions for Claims and Equity Security Interests Generally

10.01    *Contingent, Disputed, or Unliquidated Claims:* In the event that the claim of any creditor is contingent, unliquidated, or subject to a dispute on the Plan Confirmation Date, the Debtor and Creditor may, in their sole discretion, request the Court to estimate for the purpose of allowance under Section 502 of the Code, as soon as practicable after the Plan Confirmation Date, (a) any disputed, contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay administration of this Chapter 11 case, and (b) any right to payment arising from the right to an equitable remedy for breach of performance. Any holder of a disputed, unliquidated, or contingent claim, who has not sought the right to vote an estimated amount prior to the hearing on confirmation of the Plan shall not be entitled to vote on the Plan.

## Section XI. Discharge and Final Decree

11.01    *Discharge*: Upon completion of payments under the Plan to Class*es* 2, 3, and 4, the

Debtors will file a motion for entry of discharge pursuant to 11 U.S.C. §1141 to discharge all dischargeable claims.

11.02. *Final Decree*: Promptly after the Plan Distribution Date, Debtors shall file a motion for entry of a final decree to close the Debtors' chapter 11 proceeding subject to the Court retaining jurisdiction as set forth in Section XII.

## Section XII. Retention of Jurisdiction

12.01   The Bankruptcy Court shall retain jurisdiction of this case after the Plan Effective Date for the purposes set forth in 11 U.S.C.§§506, 524, 1127(b)(c)(d)(e), 1141, 1142, 1143, 1146, and this Section XI to (a) determine the allowability, avoidability, and voidability of any claim or interest that arose prior to the Plan Effective Date, (b) fix allowance of compensation or other administrative expenses, whenever and however arising, (c) enforce the payment of all administrative expenses, (d) rule on any motion or complaint, whether filed prior or subsequent to the Plan Effective Date, (e) enter a final decree, (f) adjudicated any motion filed by the Debtors to re-open the case to enforce the terms of the Plan or obtain a  discharge and (g) enter a discharge order.

## Section XIII.  Miscellaneous Provisions

13.01   *Plan Amendments* - The treatment of any claim or other Plan provision may be amended prior to the entry of a final decree provided such amendment is approved by the Court.

13.02   *Non-Impairment by Agreement*: Debtors and any claimant may enter into a stipulation to modify the contract upon which such claim is based to (a) remove all defaults which may exist under the contract as of confirmation of the Plan, (b) have the claim deemed current,  and (c) pay the claim according to the modified contract and state law and not under the Plan.

13.03   *Present Value Determinations*: In the event the Court rules that any proposed interest rate under the Plan for any class does not satisfy the Code's requirements, then the applicable interest rate for such class shall be such rate which is approved by the Court.

13.04   *Executory Contracts and Unexpired Leases* - All pre-petition executory contracts and

unexpired leases of the Debtors shall be deemed rejected as of the Plan Effective Date unless an application to assume any such contract or lease is filed by the Debtor prior to the Plan Effective Date.

13.05   *Section 1129(a)(5) Disclosure* - The identity and affiliation of the only individual who is to serve, after confirmation of the Plan, as director, officer, or a voting trustee of the Debtor, and affiliates of the Debtor participating in the joint plan with the Debtor, or successor to the Debtor under the Plan are Joseph Cuervo and Mary Cuervo. The only insiders who will be employed or retained by the reorganized Debtors are Joseph Cuervo and Mary Cuervo. The projected income for 2018 for Joseph Cuervo is $300,000 and for Mary Cuervo is $77,565.

13.06   *Remedy for Defects, Omissions, and Conflicts in Plan* - Debtors may remedy any defect or omission, or reconcile any inconsistencies in the Plan ("Remedies"), with approval of the Court, and so long as it does not materially or adversely affect the interests of the creditors in such a manner and as may be necessary to carry out the purposes, intent, and effect of the Plan. Prior to the entry of a plan confirmation order Remedies may be set forth in the order confirming the Plan. After the entry of a confirmation order, Remedies shall become binding on the entry of an order approving the Remedies.

13.07   *Title to Property* - Upon the entry of a final decree, all assets of the Debtors shall be re-vested in the Debtors subject only to the outstanding liens which are not avoided by the Debtors.

13.08   *IRS Tax Lien* - Any tax liens filed by the IRS against Debtors' Assets after the filing of the Debtors' petition, if not already released, shall be released within 15 days after the Plan Confirmation Date.

13.09   *Pre-Payment Right* - Debtors reserve the right at any time to prepay any payment obligation under the Plan or component of such obligation in whole or in part without penalty and to designate the application of such pre-payment to such component. If a claim is being paid without interest under the Plan and the claim is subject to being discharged when the discharge order is entered, Debtors are entitled to a discount for any early payment of such claim at rate of 4% per annum.

13.10   *Right to Cure*: If Debtors default on any payment obligation under the Plan, any such creditor aggrieved by such default in enjoined from commencing any action against the Debtors or

the Debtors' property on account of such default until such creditor provides written notice of the nature of such default by certified mail to the Debtors by mailing such notice to Debtors' accountant, Ronald J. Einwag at 20 Stanwix St. # 630, Pittsburgh, PA 15222, and by ordinary mail to Debtor's bankruptcy counsel, Gary W. Short, at 212 Windgap Road, Pittsburgh, PA 15237. Debtors shall have the right to cure any default on any plan obligation within fifteen (15) days of the receipt of the notice of default by Ronald J. Einwag and Gary W. Short.

13.11  *Post-Confirmation Injunction:* The provisions of the Plan as confirmed bind the Debtors, any entity acquiring property under the Plan, and any creditor, whether or not they accepted the plan or their claim is impaired under the Plan. All claimants are enjoined from filing liens against the Debtors' Assets for any claim which exists as of the Plan Confirmation Date with the exception of any lien obtained after the Plan Confirmation Date decree as a result of uncured Plan default. In any creditor violates the terms of the Plan, Debtors may file a motion to enforce the terms of the Plan and seek sanctions against such claimant as the Court may deem appropriate.

13.12  *Plan Distribution Address* - The address to be used for plan distributions shall be the address listed on the Debtors' Schedules unless any such claimant provides notice of a different address. In that event the address provided by claimant will be used for plan distributions.

13.13  Reconciliation of Claims - The claims asserted by Revenue in its proof of claim shall control over the amount listed for Revenue on the Debtors' Schedule of Assets and Liabilities unless Debtors' object to the claims.

Debtors

/s/ Joseph Cuervo
Joseph Cuervo

/s/ Mary E. Cuervo
Mary E. Cuervo

/s/ Gary W. Short
Gary W. Short, Esquire   (PA Bar I.D. No. 36794)
212 Windgap Road, Pittsburgh, PA 15237
Tele. (412) 765-0100 / Fax (412) 536-3977
E-mail garyshortlegal@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 17-20492 GLT** |
| | ) | |
| **JOSEPH CUERVO and MARY E. CUERVO,** | ) | **CHAPTER 11** |
| | ) | |
| **DEBTORS.** | ) | |

**CERTIFICATE OF SERVICE**

      I, Gary W. Short, Esquire, do hereby certify that on December 12, 2017, true and correct copies of the Debtors' Amended Chapter 11 Plan of Reorganization, Disclosure Statement, and Plan Summary were served by first class U.S. Mail, postage prepaid, on the parties listed below:

Office of the U. S. Trustee
Suite 970
1001 Liberty Avenue
Pittsburgh PA 15222

Joseph Cuervo
Mary E. Cuervo
8000 Sherwood Drive
Presto, PA 15142

                                  /s/ Gary W. Short
                                  Gary W. Short, Esquire   (PA Bar I.D. No. 36794)
                                  Counsel for the Debtor
                                  212 Windgap Road, Pittsburgh, PA 15237
                                  Tele. (412) 765-0100 / Fax (412) 536-3977
                                  E-mail garyshortlegal@gmail.com